177 P.2d 157

**JONES v. BOISE PRODUCE & COMMIS-SION CO., Limited, et al.**

No. 7293.

Supreme Court of Idaho.

Feb. 4, 1947.

288

Walter M. Oros and Frank L. Benson, both of Boise, for appellant.

E. B. Smith, of Boise, for respondents.

GIVENS, Justice.

December 24, 1926, appellant, employed by the Boise Produce and Commission Company, Ltd., compensably fractured the tibia and internal malleolus of his right ankle.

The employer furnished medical and hospital care and paid compensation until May 1, 1927. The matter was not brought to the attention of the Industrial Accident Board until May 18, 1944, when his leg having caused him further trouble, appellant sought compensation and medical expenses additional to those previously paid prior to May 1, 1927. These were refused by respondents, whereupon appellant filed a petition for relief with the Board. Hearing was had on August 25, 1944, and the Board made the following award September 14, 1944:

"Wherefore it is ordered, and this does order, that the claimant Ralph C. Jones, be and hereby is awarded against the defendant Aetna Casualty and Surety Company, surety, the sum of $98.30 for compensation and for medical services and hospital attendance had.

"And it is hereby further ordered and this does order, that the defendant Aetna Casualty and Surety Company, surety within 30 days from the date hereof tender the claimant, at its expense, the services of a physician and surgeon to be mutually agreed upon between said defendant and claimant, and if they can not agree, then by one chosen by the Industrial Accident Board, for removal of the pin now in the

bones of his ankle and the fragments of bones now therein; that if said surety fails or refuses, within the said period of time to make such tender, the claimant may at the cost and expense of the surety have such service by a physician and surgeon of his own choosing; further, that if, and after, such operation is had and the claimant is surgically healed therefrom, the amount of his permanent partial disability in his ankle remaining, if any, be then determined by the Industrial Accident Board; further, if said surety fails to make such tender or if claimant fails to have such surgery, the claimant's permanent partial disability by reason of said accident, be and hereby is fixed at 33⅓% of the loss of the foot as of December 25, 1943, and in such event the claimant is hereby awarded additional compensation in the sum of $659.89 for his permanent partial disability, and the defendant surety is ordered to forthwith pay into the state treasury, to be deposited in the Industrial Special Indemnity Fund, the sum of $13.33.

"It is further ordered and this does order, that if said operation is had that during the period of disability resulting therefrom, the defendant surety shall pay compensation to claimant at the rate of $16.00 a week.

"And it is further ordered, that the Board retain jurisdiction of the matter until its further order therein."

October 12, 1944, and thus within the thirty-day limit in the above order, respondent tendered the required medical and surgical services as shown by the noted exhibit.[1] Such services were not accepted, but were refused by appellant.

Appellant and respondents, employer and surety, appealed and cross-appealed from the order, October 14, 1944.

Upon payment to appellant by respondent and receipt by appellant from respondent of:

"Claimant's total temporary disability, per award ............. $ 13.30
"Claimant's partial disability, per award ...................... 659.89
"Hospitalization, per award ..... 30.00
"Medical, per award ............ 55.00
"Additional medical as demanded by attending physician ....... 46.50
"Claimant's appeal fee .......... 15.00
                                   ————
   Total .................... $819.69"

the appeals were severally dismissed, pursuant to the following stipulation, April 12, 1945:

---

[1] "October 12, 1944
"Mr. Ralph C. Jones,
   "Route One, Northwest of City,
   "Boise, Idaho.
"Dear Sir:
   "According to the award of the State Industrial Accident Board, following its hearing on August 25, 1944, of your claim against the Boise Produce and Commission Company, Limited, employer, and the Aetna Casualty and Surety Company, surety, we attach herewith our draft for $98.30 for compensation, and for medical services and hospital attendance.
   "And further, we hereby tender you, at the expense of the Aetna Casualty

"It is hereby stipulated by and between the parties to the above entitled cause by and through their respective attorneys of record that in consideration of all matters and differences heretofore pending between the parties hereto having been fully settled, that the appeal now pending in said court and cause by the appellant and cross-respondent may be dismissed; likewise, that the cross-appeal pending in said cause taken by the respondent and cross-appellants may also be dismissed.

"It is further stipulated upon entry of order of dismissal herein that the cause may be remitted forthwith to the Industrial Accident Board, for any further proceedings consistent with the workmen's compensation law."

Evidently the pin or nail had been inserted in appellant's ankle December 21, 1943, by Dr. Burton; thus, prior to the first hearing.

April 13, 1945, appellant was operated on by Dr. Pittenger, a surgeon of his own choosing. Appellant thereafter consulted Dr. Koelsch, asserted to be respondent's physician, and at his own, i.e. appellant's instance on September 19, 1945, had Dr. Koelsch operate on him. The Board's order contemplated the removal of the pin, but Dr. Koelsch did not remove it, testifying it (the pin or nail) had become so firmly imbedded in and completely covered by bone that he 'didn't feel it (the pin or nail) was producing any of appellant's tenderness' and that he found bone formation in spite of the X-ray's indication of only fibrous union.

Thereupon, July 6, 1945, appellant demanded compensation and medical reimbursement from respondents and upon their refusal to comply therewith, filed a petition July 13, 1945, with the Board for ensuing medical expenses, compensation, and attorney's fees.

After a hearing on January 8, 1946, the Board reviewing the above detailed history of the litigation, determined:

"That claimant now has a permanent partial disability equivalent to and comparable with 20% of the loss of one foot by amputation at the ankle."

Respondents contend the first award was complete res judicata of all claims for compensation in connection with the accident or any present aftermath, and that the disability as found being reduced from 33⅓% to 20%, appellant has in effect been overpaid in the amount of $259.89.

Appellant contends the first award is not res judicata, and that in spite of the fact he had dismissed his appeal, which ques-

and Surety Company, the services of a physician and surgeon to be mutually agreed upon between us, and if we cannot agree upon such physician and surgeon, then one chosen by the Industrial Accident Board, for the removal of the pin now in the bones of your ankle and the fragments of bones now therein, as provided by the said award of the Industrial Accident Board.

"Very truly yours,

"Aetna Casualty and Surety Company, Surety

"By: W. B. Cram, adjuster."

tioned the order of the Board, and had accepted the full award of 33⅓% loss of the foot at the ankle; did not avail himself of the medical and surgical services as ordered by the Board and tendered by Surety, but secured only surgical attention of his own choosing, argues that—evidently under the reserve clause of its order and the stipulation—the Board should have increased the specific indemnity award. Also, since he was in a cast for seven weeks following the operation by Dr. Pittenger on April 13, 1945, and was not able to work after the second operation on September 19, 1945, and until the date of the hearing, as efficiently as he had been able to work previously, the Board should have awarded him as for total disability for the above periods of time, together with his medical expenses connected with the two operations and hospital bills amounting to $140.45.

The Board evidently considered that the award of September 14, 1944, was not, as such, res judicata because the Board retained jurisdiction and that the stipulation of the parties considered and therefore concluded only " * * * all matters and differences *heretofore pending* * * *." (Emphasis ours.)

The stipulation would seem to indicate, first, that all matters in connection with appellant's disability and compensation therefor, including medical services up to the date of the stipulation on April 12, 1945, were thereby settled by the payment to appellant and his acceptance of $819.69 then paid by respondent.

Future conditions or proceedings alone were thus reserved, obviously including subsequent change of condition if such arises.

Appellant's application for the hearing which resulted in the order appealed from herein, after giving in some detail the history of the proceedings up to the date of the petition, July 13, 1945, recites thus:

"That on the 23rd day of April, 1945, claimant was operated on and said pin was removed from his right ankle; that as a result of said operation claimant has incurred medical and hospital expense and additional total disability.

"That at the time of the accident the claimant was a married man with two dependent children under the age of 18 years and was earning an average weekly wage of $28.50 and was working six days per week.

"That on or about the 6th day of July, 1945, claimant made written demand upon the defendant, Aetna Casualty and Surety Co., that said defendant pay claimant compensation due for unpaid medical and hospital charges of said operation and for unpaid compensation for disabilities; that said defendant did wrongfully and wilfully and without reasonable grounds or justification therefore, on the 7th day of July, 1945 refuse to pay said sums or any part thereof."

There is no testimony in the record as to what operation was performed April 13, which is evidently the one referred to as of April 23. Appellant testified:

"Q. On what date did Dr. Pittenger perform that operation? A. The 13th of April, 1945.

"Q. Were you hospitalized for that operation? A. I was.

"Q. How long were you hospitalized? A. Oh, I think five or six days.

"Q. Where? A. In St. Alphonsus Hospital."

Dr. Pittenger was not called at the second hearing and, of course, gave no testimony as to what this operation consisted of. At the first hearing, he indicated the pin should be removed. There is no evidence that a pin or nail was removed by Dr. Pittenger, or later put into appellant's leg, yet Dr. Koelsch testified that at the time he operated in September 1945, this pin or nail was in appellant's leg. Dr. Burton testified appellant was surgically healed in November 1945, and did not testify that the pin or nail had been removed, so evidently the pin or nail has not been removed.

Apparently appellant now contends he is entitled to the added compensation sought by him in this proceedings because of changed condition, though as appears from the quotation therefrom, there is no allegation in his petition of changed condition. Conceding, however, that if there were evidence of a charged condition, the Board would have authority to award in accordance therewith and should have awarded for the time of the claimed total disabilities following the operation by Dr. Pittenger and the operation by Dr. Koelsch, the Board found in this respect that the claimant suffered total temporary disability between April 13, 1945 and June 9, 1945, and September 19, 1945 to October 4, 1945, a total of 72 days or, at most, ten weeks and a fraction. If we revive and give effect to the original optional order entered by the Board, though appellant did not comply therewith, the rate of compensation to be paid him because of periods of disability following the operations contemplated, was fixed by the Board at $16 a week; thus, the total for eleven weeks would amount to $176.

The reservation in the order and in the stipulation, being unrestricted, reasonably contemplated that the Board might redetermine, up or down, the special schedule award only provisionally fixed in its first order at 33⅓%, which they did redetermine, fixing the present disability at 20%.

Dr. Burton testified that in December 1943, his estimate of appellant's disability was 10% compared to the loss of the foot at the ankle and that on November 2, 1945, it had doubled, or was 20%. Appellant argues that because the Board found at the earlier date his disability was 33⅓% and according to Dr. Burton, it is now double, and because he was totally disabled for at least ten weeks, (claimed by appellant to

be longer), being in a cast after the second operation, the present award of only 20% is too low. Dr. Koelsch, who performed the last operation, testified that at the present time appellant's disability amounted to 15%.

The Board is not required to adopt the lowest or the highest estimate and its determination of the facts, if supported by competent evidence and reasonable, is binding. Herein the Board's estimate is supported by the testimony of Dr. Koelsch and so far as the exact percentage, by Dr. Burton.

Respondent, by paying the full amount on the basis of 33⅓%, has overpaid by $259.89 as against the ultimate determination of 20%. Thus, if the Board should have awarded for the periods of total disability following the operations as found by it, the amount thereof, $176, is encompassed within the overpayment of $259.89.

Appellant urges the period of time as found by the Board is too short and not sustained by the evidence and that the rule announced in Goble v. New World Life Ins. Co., 57 Idaho 516, at page 521, 67 P.2d 280, 282, though in connection with a life insurance policy, that: " * * *, it is not necessary for the insured to be absolutely helpless, or entirely unable to do anything worthy of compensation, or from which gain might be derived" to be totally disabled, and that: "If he is so disabled that substantially all the avenues of gainful employment are reasonably closed to him his condition is within the meaning of the covenant" is the proper criterion.

Conceding that such rule is applicable, though as noted it was in connection with the covenant in a life insurance policy and not in a statute covering workmen's compensation, appellant testified as to being unable after the operations and after his immediate recovery therefrom, to carry on some of the occupations in which he had previously engaged. Nevertheless, his final statement, together with the delineation of his activities was to this effect:

"Q. Have you been able to work because of your ankle? A. Well, I can do some things. I have worked out a little. One of my neighbors asked me to hang some doors in a new house he was building. He told me he could give me a job on the level floor and I could suit myself as to hours. I never worked a full day. I only worked about two weeks for him anyway. I didn't work full time. I have built a few chimmeys and done odd jobs like that around the neighborhood. Does that answer the ques-

The determination of the length of disability was a question of fact for the Board and we cannot say that the evidence is of such a nature as not to sustain their findings and under the Constitution we are bound thereby; consequently, except for the period of time, if we give full effect to appellant's contentions and disregard entirely his failure to accept the tender, dismissal of his appeal and acceptance of the

full award previously made, he has received more than he now asks for.

While appellant did not comply with the provisional part of the order, and tender of medical care as made by respondent, the operation ordered by the Board was for the removal of the pin. Dr. Koelsch, though employed by appellant, was evidently likewise respondent's physician, and there is nothing in the record to indicate that the operation as performed by him and the conclusion reached by him, whereby he did not remove the pin, was not the same operation and with like resultant effect and conclusion as if he had performed operation under the tender as made by respondent.

As indicated above, the nature of the operation as performed by Dr. Pittenger is not disclosed.

 "Payments, (i.e. hospital and medical) are in addition to the compensation provided for the employee * * *," and inferentially, not a part thereof nor included therein. State ex rel. Wright v. C. C. Anderson Co., 65 Idaho 400, at page 407, 145 P.2d 237. Therefore, while these medical expenses were not incurred under the tender, the evidence does not disclose they were not for operations of the kind and nature contemplated by the first order and encompassed within the purpose and purview of the tender. Consequently, the

$140.45, the amount of the hospital and medical fees incurred by appellant subsequent to the dismissal of the first proceedings, may be awarded to appellant in addition to the compensation already paid.

Appellant did not establish his right to attorney's fees under Section 43-1411, I.C.A.[2]

As thus modified, the award of the Board is affirmed. Costs awarded to appellant.

BUDGE, C. J., HOLDEN and MILLER, JJ., and SUTPHEN, District Judge, concur.

---

[2] "If the board, or any court before whom any proceedings are brought under this act, determines that such proceedings have been brought, prosecuted or defended without reasonable ground, he or it may assess the whole cost of the proceedings upon the party who has so brought, prosecuted or defended them." Section 43-1411, I.C.A.